1   CAMPEAU GOODSELL SMITH, L.C.
    SCOTT L. GOODSELL, #122223
2   WILLIAM J. HEALY, #146158
    440 N. 1st St., #100
3   San Jose, California   95113
    Telephone:   (408) 295-9555
4
    ATTORNEYS FOR
5   Debtor and Plaintiff

6

7

8               UNITED STATES BANKRUPTCY COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                      (San Jose Division)

11  In re:                          )   Case No. 11-53334
                                    )
12  CORTE DE ROSA HOMES, LLC,       )       CHAPTER 11
                                    )
13                                  )
            Debtor.                 )
14  _____)
                                    )   Adversary Proceeding
15  CORTE DE ROSA HOMES, LLC,       )
                                    )     No. 11-05206
16          Plaintiff.              )
                                    )   **SECOND AMENDED**
17  v.                              )   **COMPLAINT FOR:**
                                    )
18  VINEYARD BANK, N.A. and         )   **1. RESCISSION**
    CALIFORNIA BANK & TRUST.        )   **2. BREACH OF ORAL**
19                                  )   **CONTRACT/PROMISSORY**
            Defendants.             )   **ESTOPPEL**
20                                  )   **3. NEGLIGENCE**
                                    )   **4.FRAUD AND DECEIT**
21                                  )   **5. WILFUL VIOLATION OF**
                                    )   **CAL.CIVIL.CODE 2943 WILFUL**
22                                  )   **VIOLATION OF CAL.CIV.CODE**
                                        **2943**
23                                      **6. INTENTIONAL INTERFERENCE**
                                        **WITH PROSPECTIVE ECONOMIC**
24                                      **ADVANTAGE/CONTRACTUAL**
                                        **RELATIONS**
25                                      **7. NEGLIGENT INTERFERENCE**
                                        **WITH PROSPECTIVE ECONOMIC**
26                                      **ADVANTAGE/CONTRACTUAL**
                                        **RELATIONS**
27                                      **8. DECLARATORY RELIEF**

28  _____)

Plaintiff CORTE DE ROSA HOMES, LLC ("Corte" or "Plaintiff"), hereby alleges, on information and belief, as follows:

## Parties

1.     Corte De Rosa Homes, LLC ("Corte") was and is authorized to conduct business in the State of California and, for purposes of this matter, its business was to purchase, develop, own, and/or sell land in San Jose, California generally referred to as Corte de Rosa located in San Jose, County of Santa Clara, California with Assessor's Parcel Number 575-16-053 ("Corte Property").

2.     Howell & McNeill Development, LLC ("Howell & McNeill"or "Plaintiff") is authorized to conduct business in the State of California and, for purposes of this matter, its business was to purchase, develop, own, and/or sell land.

3.     Vineyard Bank, N.A. ("Vineyard Bank") was a commercial lender operating in the State of California and with a principal place of business in Palo Alto, California. Plaintiff is informed that California Bank & Trust ("CBT") is a national banking association operating in the State of California. Plaintiff is informed that on or about July 17, 2009, Vineyard Bank was closed by the Office of the Comptroller of the Currency ("OCC"), pursuant to federal law the OCC assigned all assets and liabilities of Vineyard Bank of to the Federal Deposit Insurance Company ("FDIC"), and the FDIC then assigned such to CBT.

## Jurisdiction And Venue

4.     The United States Bankruptcy Court for the Northern  District of California has jurisdiction over this proceeding pursuant to Title 28 U.S.C. 1334 (b). This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. 157 (b).

5.      Venue is proper in this district pursuant to 28 U.S.C. 1409 since Debtor's bankruptcy case is pending in this district. Venue is proper within this division since Debtor conducts business in this county.

## General Allegations

6.     On or about August 9, 2007, Corte executed a Promissory Note and a Business Loan Agreement with Vineyard Bank in the total amount of $2,592,500.00 ("Note") (Exhibit A).

On or about August 9, 2007, Corte also executed a deed of trust, recorded with the Santa Clara County Recorder on or about September 20, 2007 (Document Number 19591479), as security for the obligation relative to the Corte Property, defined below (Exhibit B). The deed of trust prepared by Vineyard Bank stated **"MAXIMUM LIEN: The lien of this Deed of Trust shall not exceed at any one time $1,715,000.00"** (Emphasis NOT added).

7.      On or about August 9, 2007, Howell & McNeill, as part of the above described transaction and as separate security for the obligation, provided Vineyard Bank with a deed of trust, recorded on or about September 20, 2007 (Document Number 2007-0050135) in the Office of the Recorder of Santa Cruz County, California, for real property generally referred to as Beach Drive, Aptos, County of Santa Cruz, California, Assessor's Parcel Number 043-161-53 ("Beach Property") (Exhibit C). The deed of trust prepared by Vineyard Bank specifically stated "**MAXIMUM LIEN: The lien of this Deed of Trust shall not exceed at any one time $877,500.00**". (Emphasis NOT added).

8.      The promissory and both deeds of trust specifically stated that nothing therein shall preclude any party from seeking equitable relief. The deeds of trusts also specifically provided that the deeds of trust secured obligations under all loan agreements and agreements in connection with the underlying obligation. Vineyard Bank structured the transaction in this fashion for various reasons, including so Corte and/or Howell & McNeill could sell the properties separately. Corte and Howell & McNeill were beneficiaries of the other's deed of trust.

9.      The specific purpose of the underlying transaction with Vineyard Bank was for Corte to purchase, develop, own, and/or sell land in San Jose, California generally referred to as Corte de Rosa located in San Jose, County of Santa Clara, California with Assessor's Parcel Number 575-16-053 ("Corte Property"). As an essential element of the transaction, and consistent with prior discussion and dealings between and practice of the parties, Vineyard Bank agreed to provide a construction loan to Corte once the subject property was ready for construction. Initially the construction loan was to be secured by one to four residential units on the Corte Property, was to be no less than $2,822,398.00 with a floor interest rate of 7%,

and was to be issued as initial site improvements were completed. The parties also agreed to a further construction loan, secured by one to four additional units on the Corte Property, was to be no less than $2,822,398.00 with a floor interest rate of 7%, and was to be issued as initial site improvements were completed.

10.     All the material terms of the construction loan were agreed to by Corte and Vineyard Bank consistent with prior dealings between the parties, custom and practice in the industry and the marketplace.

11.     Corte would not have purchased the Corte Property, Corte would not have executed the Note, Corte and Howell & McNeill would not have executed the Corte Property deed of trust or the Beach Property deed of trust respectfully, and Corte and Howell & McNeill would not have entered into any negotiations or agreements with Vineyard Bank had Vineyard Bank not initially agreed to provide a construction loan on the project consistent with this agreement, prior dealings between the parties, and practice on the industry and marketplace. A reasonable person in the position of Corte and Howell & McNeill would not have executed the Note, the Corte Property deed of trust, or the Beach Property deed of trust, purchased the Corte Property, or entered in to any negotiations or agreements with Vineyard Bank had Vineyard Bank not initially agreed to provide a construction loan on the project.

12.     Corte and Howell & McNeill were justified in relying on the promises of Vineyard Bank and extending substantial value in reliance on the promises of Vineyard Bank. Corte and Howell & McNeill's financial positions substantially changed as a result of Vineyard Bank's promises to provide a construction loan, Corte and Howell & McNeill expended time and money in reliance on Vineyard Bank's promises to provide a construction loan, Corte and Howell & McNeill have already and will continue to suffer substantial financial hardship if the promises of Vineyard Bank are not enforced, and Vineyard Bank and CBT will be unjustly enriched if the promises of Vineyard Bank are not enforced.

13.     At all times before, during, and after August 2007 when the Note was executed Vineyard Bank knew that a construction loan was an essential requirement of the underlying project. Corte would not have invested time and money to purchase the Corte Property

absent a promised construction loan, Corte would not have entered into the Note and deed of trust absence a promised construction loan, and Howell & McNeill would not have invested time and money or allowed the Beach Property to be encumbered by Vineyard Bank as part of the transaction absent a promised construction loan. In addition, Vineyard Bank knew, at all relevant times, that Corte and Howell & McNeill invested time and money and allowed the Beach Property to be encumbered and would not have continued to invest time and money developing the Corte Property and cooperating with and incurring the cost of Vineyard Bank's construction loan underwriting and appraisal in the absence of the promised construction loan.

14.     Once the Corte Property was purchased by Corte, Corte began the process of developing the property, spent considerable funds on related site developments. From at least March 2008 through November 2008 Vineyard Bank and its construction loan officers sent writings to Corte regarding the purchase and development of the Corte Property and processing the construction loan, requested and received information from Corte relative to the construction loan, and secured an appraisal of the Corte Property upon construction of housing units in order to fund the construction loan. Thereafter, Corte was ready for the construction phase and the construction loan.

15.     On October 29, 2008 Vineyard Bank's appraiser issued an appraisal (as of October 15, 2008) of Corte for construction loan purposes and offered various values, including: Retail Value Lots 1-8 $5,160,000; As-Is Market Value $2,475,000, Prospective Market Value (assuming recordation of final map) $3,000,000, and Prospective Bulk Market Value of proposed homes on lots 4-7 of $6,320,000.  The appraisal, at Corte's expense, was an essential part of the processing of the promised construction loan.

16.     On November 24, 2008 Vineyard Bank, via email, notified Corte that Vineyard Bank was shutting down its construction funding in Northern California and would be unable to fund the next phase of the project. Vineyard Bank did not provide Corte or Howell & McNeill with any advance notice of this decision, did not provide Corte or Howell & McNeill with any information suggesting or indicating that the shutting down of

construction funding was a possibility, withheld information from Corte and Howell & McNeill regarding any investigation by the FDIC, any agreements with the FDIC regarding funding of loans, or its inability to fund loans, and at least until November 24, 2008 acted consistent with prior dealings between the parties, custom and practice in the industry and the marketplace towards funding of the promised construction loan following the appraisal.

17.     Shortly after Vineyard Bank failed and refused to honor its commitment to provide a construction loan to Corte de Rosa, loan payments were terminated and a notice of default asserted by Vineyard Bank and/or CBT. Corte and Howell & McNeill tried to persuade Vineyard Bank and/or CBT to honor their construction loan commitment, but were unsuccessful.

18.     On March 17, 2009, Corte and Howell & McNeill flew from Northern California to Southern California to meet with Ryan Clark of Vineyard Bank to pay off the deeds of trust and/or loan and prevent the recording of a notice of default which would prevent or hinder marketing or refinancing the deeds of trust and/or loan. At the meeting Corte and Howell & McNeill requested a payoff figure for the deeds of trust and/or loan, but Ryan Clark indicated that Vineyard Bank refused to provide a payoff figure for the deeds of trust and/or loan.

19.     Corte and Howell & McNeill tried to have CBT provide payoff figures for the respective deeds of trust so the properties could be sold and CBT paid, but CBT refused and as a result sale opportunities for the properties, in particular Corte, were lost and Corte and Howell & McNeil each sustained damages. For example, from approximately August 2010 through October 2010 Corte, and its title agent, tried repeatedly, both informally and formally, including but limited to August 30, 2010, September 15, 2010, September 23, 2010, October 12, 2010, and October 14, 2010, to have CBT provide Corte with a payoff figure relative to the Corte deed of trust so the Corte Property could be sold and CBT could be paid. Notwithstanding numerous formal and informal requests and demands for a payoff figure relative to the Corte deed of trust and demands for CBT to timely comply with its

statutory required response, Corte did not receive responses from CBT or received untimely

and/or incomplete responses, received indications that it was not authorized to provide Corte with such information, and/or received untimely payoff figures for the loan as opposed to the Corte deed of trust. As a direct and proximate result of CBT's action and inactions Corte and Howell & McNeill could not sell the Corte Property or the Beach Property, lost sales and sales opportunities, and sustained damages.

20.     In August 19, 2010, notwithstanding and contrary to CBT's other actions, Corte received an acknowledgment from CBT that the Corte Property and the Beach Property each had separate deeds of trust and that each had a specifically stated maximum value.

21.     In March 2011 Corte presented CBT with a sale of the Corte Property and presented CBT with an estimated closing stated dated March 9, 2011 which showed proceeds to CBT of $2,456,496–an amount sufficient to pay off the Corte deed of trust and significantly pay down the Note and/or pay down the Beach deed of trust. On March 15, 2011 Corte sought CBT's consent to a sale which would have resulted in the sale of the Corte Property and payment to CBT of $2,456.496–an amount sufficient to pay off the Corte deed of trust and significantly pay off the Note and/or pay down the Beach deed of trust. On March 16, 2011, CBT, through Ryan Clark, refused to agree to the sale and the sale of one of the two properties and otherwise ignored the stated language in the associated deeds of trust. Notwithstanding the specific language in the Corte deed of trust, CBT refused to consent to the sale and receipt of the net sale proceeds, pay off of the Corte deed of trust and significantly pay down of the Note and/or pay down the Beach deed of trust. As a result the sale was lost, an opportunity for Corte to payoff the Corte deed of trust, payoff or pay down the Howell & McNeill deed of trust, and the Note was lost, and Corte and Howell & McNeill each sustained damages.

22.     At relevant times Corte tried to sell the Corte Property and had sales for approximately $2.2 million, $2.4 million, $2.75 million, and $2.9 million. In particular, Corte had sales contracts for $2.9 million in September 2009, $2.2 million in December

2010, and $2.75 million in March 2011. Corte lost all of these sale opportunities because

CBT refused to provide pay off figures, refused to provide pay off figures in relation to the lien value stated in the Corte deed of trust, and refused to timely provide pay off figures in accordance with statutory requirements and consistent with the Corte deed of trust.

23.     As a result of Vineyard's and CBT's actions and inactions, Corte lost the sales referenced hereinabove even though in August 2010 and post these bankruptcies CBT's counsel and CBT have acknowledged the controlling maximum lien values stated in the two deeds of trust. As a result of Vineyard's and CBT's actions and inactions, they have fundamentally precluded Corte from selling the Corte Property or paying off or paying down or refinancing the Corte Property deed of trust or Howell & McNeill from selling the Beach Property or paying off or paying down or refinancing the Beach Property deed of trust. The subject properties, especially, the Beach Property, lost value as a result of Vineyard Bank's actions and inactions and CBT's actions and inactions and caused damage to Corte and Howell & McNeill.

24.     On March 11, 2011 CBT recorded a Notice of Trustee Sale to foreclose on the Corte deed of trust and asserted a payoff figure of $2,587,934.00 and also recorded a Notice of Trustee Sale to foreclose on the Beach deed of trust and asserted a payoff figure of $1,749,013.90. Neither figure appeared to consistent with the payoff figures that CBT did provide when Corte requested a pay off figure for the Corte Property deed of trust or consent to a sale, neither figure appeared consistent with the stated maximum lien value language on the respective deeds of trust, neither appeared consistent with CBT's counsel's August 2010 reference to the stated maximum lien value language on the respective deeds of trust, but both demonstrated that CBT had violated its duty to provide a timely and specific payoff and demand so the deeds of trust could be paid off and discharged as part of any voluntary sale and violated California Civil Code Section 2924f.

25.     On April 8, 2011, Howell & McNeill (In re Howell & McNeill Development, LLC, United States Bankruptcy Court (ND CA)(San Jose Division) Case No.: 11-53338 and Corte de Rosa (In re Corte de Rosa Homes, LLC, United States Bankruptcy Court (ND CA)(San Jose Division) Case No.: 11-53334) commenced bankruptcies to stay California Bank &

Trust's foreclosure sales of the Corte deed of trust and Beach deed of trust.

26.     On October 9, 2011 CBT filed a Proof of Claim against Corte asserting, as of the petition date, a secured debt of $1,715,000.00 and a total debt of $2,575,751.00 (plus interest, fees, and costs). On October 9, 2011 CBT filed a Proof of Claim against Howell & McNeill asserting, as of the petition date, a secured debt of $877,500.00 (plus interest, fees, and costs). Such figures were inconsistent with the figures stated in the notice of trustee sale, were inconsistent with the payoff figures CBT did eventually provide Corte, but were consistent with stated maximum lien value language on the respective deeds of trust.

## FIRST CAUSE OF ACTION

### (Rescission)

27.     Plaintiff realleges paragraphs 1 through 26, inclusive, as it set forth herein.

28.     Consideration for the Note, Corte Property deed of trust, and Beach Property deed of trust materially failed, in whole or in part and as such the Note, Corte Property deed of trust, and Beach Property deed of trust must be rescinded and the consideration thus far exchanged restored and the parties restored to the positions before the Corte Property deed of trust, and Beach Property deed of trust were executed. Consent to the Corte Property deed of trust, and Beach Property deed of trust was obtained through improper means, including but not limited to, fraud, undue influence, or mistake, and in the absence of such improper means consent would not have been given by Corte or Howell & McNeill. The agreement to provide a construction loan was material to the Note, Corte Property deed of trust, and Beach Property deed of trust. In addition, the Note, Corte Property deed of trust, and Beach Property deed of trust must be rescinded due to Vineyard Bank's and CBT's material breach of the agreement to provide a construction loan.

29.     Corte and Howell & McNeill's consent would not have been given because the agreement to provide a construction loan was material and of such nature, weight, and force that without it the contract would not have been made.

30.     Corte and Howell & McNeill reasonably believed Corte had an agreement with Vineyard Bank for a construction loan based on the conduct of the parties prior to and

subsequent to execution of the Note, Corte Property deed of trust, and Beach Property deed of trust as described herein above.

**A. Fraud.**

31.    Vineyard Bank's made representations to Corte and to Howell & McNeil that it would provide a construction loan for the project, the representations were important to Corte and Howell & McNeill executing the Note, Corte Property deed of trust, and Beach Property deed if trust respectfully, the representations were false when made or made without any reasonable ground for believing it to be true, and Corte and Howell & McNeill were not aware of the falsity of the representations and would not have otherwise consented to the contract. Vineyard Bank's representations were intentionally untrue and unwarranted under the circumstances. In addition, Vineyard Bank failed to disclose the true facts, had a duty to disclose the true facts to Corte and Howell & McNeill at all times, failed to disclose the true facts with an intent or reckless disregard to Corte and Howell & McNeill, and Corte and Howell & McNeill were unaware of the true facts and would not have entered into the contract had they known the true facts. Vineyard Bank knew its misrepresentations were likely to mislead Corte and Howell & McNeill, failed to correct the misrepresentations, concealed this misrepresentations, and/or having sole knowledge and access to such true facts and knew Corte and Howell & McNeill did not know the true facts and such were otherwise not discoverable by them.

**B. Unilateral Mistake.**

32.    Consent to Corte's and Howell & McNeill's respective execution of the Note, Corte Property deed of trust, and/or Beach Property deed of trust was by a unilateral mistake of fact by Corte and Howell & McNeill, a mistake regarding a basic element of the underlying transaction, a material effect on the parties adverse to Corte and Howell & McNeill. Corte and Howell & McNeil's belief that it had an agreement with Vineyard Bank to provide a construction loan on the project was from an honest and innocent belief or ignorance regarding Vineyard Bank's commitment.

//

**C. Mutual Mistake.**

33.     Consent to Corte's and Howell & McNeill's respective execution of the Note, Corte Property deed of trust, and/or Beach Property deed of trust was by a mutual mistake of fact made by Corte, Howell & McNeill, and Vineyard Bank as to the same important fact or proposition, namely that Vineyard Bank would provide a construction loan for the project. At the time that Corte and Howell & McNeill executed the Note, Corte Property deed of trust, and/or Beach Property deed of trust respectfully and at all times thereafter through November 2008, all believed that Vineyard Bank, through its construction lending department and personnel, personnel who had worked with Corte and Howell & McNeill, and the principals of such, for many years and on many similar projects, would provide a construction loan for the project.

34.     As a direct result of the mistake, Corte and Howell & McNeill suffered to serious harm and monetary damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

<u>**SECOND CAUSE OF ACTION**</u>

(Breach of Oral Contract/Promissory Estoppel)

35.     Plaintiff realleges paragraphs 1 through 26, inclusive as if set forth herein.

36.     The agreement and loan commitment between Corte and Vineyard regarding the construction loan was made orally by the parties with the intention that it be binding, was made with the intention that a formal document be prepared at a later date, and reflected, in part, by a series of written communications signed by Vineyard Bank and/or Vineyard Bank personnel and by Corte evidencing the parties' agreement, and substantial partial performance by the parties. Such communications reflected the intention to provide a construction loan and contract, adequately identified the parties thereto, subject matter and real property, indicates that a contract was made or offered, and provides the essential and/or usual, reasonable, and customary terms within a reasonable degree of certainty.

37.     A fraud would result in an unconscionable injury to Corte and to Howell & McNeill from refusing to enforce the agreement. Corte and Howell & McNeill were induced into

serious and material changes in their positions in reasonable reliance, including executing the Note, Corte Property deed of trust, and Beach Property deed of trust respectfully, spending substantial monetary resources developing the Corte Property, spending substantial monetary resources cooperating with the defendants to implement the construction loan, and maintaining ownership of the Corte Property and Beach Property. Defendants have already received substantial financial benefits by way of payments from Corte on the Note and otherwise and would be unjustly enriched if the construction loan agreement were not enforced. Corte and Howell & McNeill will suffer substantial hardship or unconscionable injury if the construction loan agreement were not enforced.

38.     Defendants, and each of them, breached their contractual obligations to Corte by not providing the agreed upon construction loan, by not providing a payoff figure for the deed of trust, by not providing a payoff figure for the deed of trust in a timely manner, and by not providing a payoff figure consistent with its statutory obligation. As a direct and proximate result of Defendants' actions and inactions, Plaintiff sustained damages in an amount to be determined but estimated at approximately $2,000,000.00.

        WHEREFORE, Plaintiff prays for relief as set forth below.

### THIRD CAUSE OF ACTION

(Negligence)

38.     Plaintiff realleges paragraphs 1 through 26, inclusive as if set forth herein.

39.     Everyone, including defendants, has a statutory duty to use ordinary care or skill to prevent or minimize foreseeable harm to others. Defendants had such a duty to Corte and Howell & McNeill.

**A. Construction Loan.**

40.     Defendants had a duty to not make promises for a construction loan that it could not deliver, a duty to promptly advise Corte and Howell & McNeill that it could not provide a construction loan, and that it was shutting down its construction lending department.

41.     Defendants breached these duties by making promises it could not keep or did not intend to keep, by delaying and withholding from Corte and Howell & McNeil that it did not

1  agree to provide a construction loan, and by delaying its decision to shut down its

2  construction lending department.

3      **B. Pay Off Demand**

4  42.    Defendants had a duty, including a statutory duty pursuant to California Civil Code

5  Section 2943, to timely provide Corte with a written statement setting forth the amount

6  required to satisfy the secured obligation and to treat unspecified demands as a request for a

7  payoff demand statement. At no time did Plaintiff waive its statutory rights or defendants'

8  statutory duties as such relates to  California Civil Code Section 2943. On several occasions

9  Defendants failed and refused to comply with such duties in a timely and proper manner and

10  failed and refused to treat unspecified demands as a request for a payoff demand statement

11  information. At no time did Plaintiff waive

12  43.    As a direct result of defendants failures and refusals to comply with their duty and

13   statutory duties to Corte, Corte was unable to sell or refinance the Corte Property or Corte

14  deed of trust, payoff or pay down the Note and Corte Property deed of trust, Howell &

15  McNeill did not receive the benefit of a sale, refinance, payoff, or pay down of the Note or

16  Corte Property deed of trust, and both Corte and Howell & McNeill sustained damages in an

17  amount to be determined but estimated at approximately $2,000,000.00.

18  WHEREFORE, Plaintiff prays for relief as set forth below.

19              **<u>FOURTH CAUSE OF ACTION</u>**

20                  (Fraud and Deceit)

21  44.    Plaintiff realleges paragraphs 1 through 43, inclusive as if set forth herein.

22  45.    Defendants made material misrepresentations regarding a construction loan. Said

23  misrepresentations were untrue and false or made by representatives of defendants

24  concerning matters they had insufficient information to know whether were true or false or

25  without any reasonable ground to believe them to be true and were made knowing and

26  intending that Corte and Howell & McNeill would reasonable rely on them. Corte and

27  Howell did reasonably rely on such misrepresentations.

28  46.    As a direct result, Corte and Howell & McNeill sustained damages in an amount to be

determined but estimated at approximately $2,000,000.00.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FIFTH CAUSE OF ACTION

(Wilful Violation of Cal.Civil.Code 2943)

47. Plaintiff realleges paragraphs 1 through 43, inclusive as if set forth herein.

48. Defendants had statutory duties pursuant to California Civil Code Section 2943, to timely provide Corte with a written statement setting forth the amount required to satisfy the secured obligation and to treat unspecified demands as a request for a payoff demand statement. At no time did Plaintiff waive its statutory rights or defendants' statutory duties as such relates to California Civil Code Section 2943.

49. On several occasions Defendants wilfully failed and refused to comply with such duties in a timely and proper manner and failed and refused to treat unspecified demands as a request for a payoff demand statement information.

50. As a direct result of defendants failures and refusals to comply with their duty and statutory duties to Corte, Corte was unable to sell or refinance the Corte Property or Corte deed of trust, payoff or pay down the Note and Corte Property deed of trust, Howell & McNeil did not receive the benefit of a sale, refinance, payoff, or pay down of the Note or Corte Property deed of trust, and both Corte and Howell & McNeill sustained damages in an amount to be determined but estimated at approximately $2,000,000.00 and is also entitled to the sum of $300.00 for each violation.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SIXTH CAUSE OF ACTION

(Intentional Interference With Prospective Economic Advantage/Contractual Relations)

51. Plaintiff realleges paragraphs 1 through 50, inclusive as if set forth herein.

52. Corte and several prospective purchasers had existing, enforceable contracts and relationships to purchase and sell the Corte Property, defendants were made aware of these contracts and relationships, defendants intentionally committed acts designed to interfere or disrupt the contracts and relationships, acts that were unlawful, and/or acts they knew were

1  substantially certain interference would occur, defendants' acts disrupted the contracts and
2  relationships, and as a result of the disruptions Corte and Howell & McNeill sustained
3  damages in an amount to be determined but estimated at approximately $2,000,000.00.
4  WHEREFORE, Plaintiff prays for relief as set forth below.

5                          **SEVENTH CAUSE OF ACTION**

6     (Negligent Interference With Prospective Economic Advantage/Contractual Relations)
7  53.   Plaintiff realleges paragraphs 1 through 50, inclusive as if set forth herein.
8  54.   Corte and several prospective purchasers had existing, enforceable contracts and
9  relationships to purchase and sell the Corte Property, these contracts and relationships were
10 reasonably certain to produce future economic benefits to Corte and to Howell & McNeill,
11 defendants were aware of these contracts and relationships or should have known of these
12 contracts and relationships, defendants knew or should have known that these contracts and
13 relationships would be disrupted if they acted negligently and/or failed to act reasonably,
14 defendants negligently committed independently wrongful acts that disrupted the contracts
15 and relationships, the contracts and relationships were in fact disrupted, and as a result of the
16 disruptions Corte and Howell & McNeil sustained damages in an amount to be determined
17 but estimated at approximately $2,000,000.00.

18                          **EIGHTH CAUSE OF ACTION**

19                              (Declaratory Relief)
20 55.   Plaintiff realleges paragraphs 1 through 50, inclusive as if set forth herein.
21 56.   An actual controversy regarding the respective rights of the parties relative to
22 interpretation of the Note, Corte Property deed of trust, and Beach Property deed of trust; the
23 amount owed pursuant to the Note; the damages sustained by Corte and Howell & McNeil as
24 a result of actions or inactions by the defendants, and each of them; the maximum lien values
25 on the Corte Property deed of trust and on the Beach Property deed of trust; the maximum
26 lien values on the Corte deed of trust and on the Beach deed of trust for purposes of a
27 California Civil Code 2943; whether Corte waived the provisions of California Civil Code
28 2943; whether Howell & McNeil waived the provision of California Civil Code 2943;

whether defendants violated California Civil Code 2943; the damages sustained by Corte and Howell & McNeil as a result of defendants' violation(s) of California Civil Code 2943; and the amount secured and unsecured owed by Plaintiff pursuant to Bankruptcy Code Section 506, has arisen such that the court's determination of the rights of the parties is necessary.

WHEREFORE, Plaintiff prays for relief as set forth below.

WHEREFORE, Plaintiff prays for Judgment against the defendants, and each of them, as follows:

1. Recission of the Note, Corte deed of trust, and Beach deed of trust;

2. For the entry of a money judgment in favor of Plaintiff in the amounts alleged herein of $2,000,000.00 and according to proof;

3. For a determination and declaration of the amount owed by Corte under the Note;

4. For a determination of the damages sustained by Corte and Howell & McNeill as caused by defendants;

5. For a determination and declaration that the maximum lien on the Corte deed of trust shall not exceed at any one time $1,715,000.00;

6. For a determination and declaration that the maximum lien on the Beach deed of trust shall not exceed at any one time $877,500.00;

7. For a determination and declaration that the maximum lien on the Corte deed of trust shall not exceed at any one time $1,715,000.00 for the purposes of California Civil Code 2943;

8. For a determination and declaration that the maximum lien on the Beach deed of trust shall not exceed at any one time $877,500.00 for the purposes of California Civil Code 2943;

9. For a determination that the provision of California Civil Code 2943 were not waived by Corte;

10. For a determination that the provision of California Civil Code 2943 were not waived by Howell & McNeil;

11. For a determination that defendants violated California Civil Code 2943;

1        12. For a determination of the damages sustained by Corte as a result of defendants'

2   violations of California Civil Code 2943;

3        13. For a determination and declaration of the secured and unsecured amount owed by

4   Plaintiff pursuant to Bankruptcy Code Section 506;

5        14. For prejudgment interest as provided by law and/or contract;

6        15. For costs of suit herein including attorneys fees; and

7        16. For such other and further relief as the Court deems just and proper.

8   Dated: September 16, 2011

                                        CAMPEAU GOODSELL SMITH
9                                        /s/ William J. Healy
                                        By: William J. Healy
10                                       Attorney For Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A



# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $2,592,500.00 | 08-09-2007 | 08-09-2008 | 8313780271 | 74 | 137802 | 829 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Corte De Rosa Homes, LLC
750 University Avenue, Suite 150
Los Gatos, CA 95032

**Lender:** Vineyard Bank, N.A.
Construction Lending
2225 East Bayshore Road, Suite #224
Palo Alto, CA 94303

---

**Principal Amount: $2,592,500.00**        **Initial Rate: 8.750%**        **Date of Note: August 9, 2007**

**PROMISE TO PAY.** Corte De Rosa Homes, LLC ("Borrower") promises to pay to Vineyard Bank, N.A. ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million Five Hundred Ninety-two Thousand Five Hundred & 00/100 Dollars ($2,592,500.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on August 9, 2008. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning September 10, 2007, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Prime rate as published in the Wall Street Journal. When a range of rates is published, the higher of the rates will be used (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each Day. Borrower understands that Lender may make loans based on other rates as well. **The Index is currently 8.250%.** The interest rate to be applied to the unpaid principal balance during this Note will be at a rate of 0.500 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 8.750%. NOTICE: Under no circumstances will the interest rate on this Note be less than 8.250% or more than the maximum rate allowed by applicable law.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a **minimum interest charge of $100.00.** Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Vineyard Bank, N.A., Credit Administration, P. O. Box 2319 Corona, CA 92878-2319.

**INTEREST RESERVES.** Borrower authorizes Lender to place $220,468.00 of the Principal Amount as an interest reserve, which is an estimate of the interest due on the Note ("Interest Reserve"). All interest payments shall be paid from the Interest Reserve. Lender may automatically deduct accrued unpaid interest from the Interest Reserve. Interest will accrue, as described in this Note, on amounts deducted from the Interest Reserve. In the event the interest due under this Note exceeds the Interest Reserve, Borrower will pay accrued unpaid interest when due according to the terms of this Note. Upon maturity, Lender will not advance or disburse the remaining Interest Reserve, if any, to Borrower. The principal due upon maturity will not include any remaining Interest Reserve.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding a 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Case: 11-05206   Doc# 17   Filed: 09/16/11   Entered: 09/16/11 15:15:39   Page 19 of 32

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.**

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $27.50 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Deed of Trust dated August 9, 2007, to a trustee in favor of Lender on real property described as "Real Property located at Corte De Rosa, San Jose, CA 95101" and located in Santa Clara County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Trustor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(B) a Deed of Trust dated August 9, 2007, to a trustee in favor of Lender on real property described as "Real Property located at Beach Drive, Aptos, CA 95003" and located in Santa Cruz County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Trustor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Note may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**ARBITRATION.** Lender and Borrower agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Note or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the financial services rules of Endispute, Inc., d/b/a J.A.M.S./ENDISPUTE or its successor in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any

Case: 11-05206   Doc# 17   Filed: 09/16/11   Entered: 09/16/11 15:15:39   Page 20 of 32

collateral securing this Note, including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Borrower and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Note shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

CORTE DE ROSA HOMES, LLC

PINNACLE PROPERTY INVESTMENTS, LLC, Member of Corte De Rosa Homes, LLC

By: _____              By: _____
Timothy G. McNeil, Member of Pinnacle Property        Gregory K. Howell, Member of Pinnacle Property
Investments, LLC                                 Investments, LLC

# EXHIBIT B

**RECORDATION REQUESTED BY:**
Vineyard Bank, N.A.
Construction Lending
2225 East Bayshore Road, Suite #224
Palo Alto, CA 94303

**WHEN RECORDED MAIL TO:**
Vineyard Bank, N.A.
Credit Administration
P. O. Box 2319
Corona, CA 92878-2319

FOR RECORDER'S USE ONLY



# DEED OF TRUST

**MAXIMUM LIEN.** The lien of this Deed of Trust shall not exceed at any one time $1,715,000.00.

**THIS DEED OF TRUST** is dated August 9, 2007, among Corte De Rosa Homes, LLC, a California Limited Liability Company, whose address is 750 University Avenue, Suite 150, Los Gatos, CA 95032 ("Trustor"); Vineyard Bank, N.A., whose address is Construction Lending, 2225 East Bayshore Road, Suite #224, Palo Alto, CA 94303 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Vineyard Bank, N.A., its successors and assigns, whose address is 1260 Corona Pointe Court, Corona, CA 92879 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.** For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property")** located in Santa Clara County, State of California:

>See Exhibit "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

**The Real Property or its address is commonly known as Corte De Rosa, San Jose, CA 95101. The Assessor's Parcel Number for the Real Property is 575-16-053.**

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

>**Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

>**Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

>**Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or

Case: 11-05206   Doc# 17   Filed: 09/16/11   Entered: 09/16/11 15:15:39   Page 23 of 32

threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Trustor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to

Case: 11-05206   Doc# 17   Filed: 09/16/11   Entered: 09/16/11 15:15:39   Page 24 of 32

Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Should Trustor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Trustor's property or Trustor's ability to repay the Indebtedness or perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Trustor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Trustor's existence as a going business or the death of any member, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured

Case: 11-05206    Doc# 17    Filed: 09/16/11    Entered: 09/16/11 15:15:39    Page 27 of
32

party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Santa Clara County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public

record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

    **Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

    **Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

    **Arbitration.** Lender and Trustor agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Deed of Trust or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the financial services rules of Endispute, Inc., d/b/a J.A.M.S./ENDISPUTE or its successor in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Property shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Property, including any claim to rescind, reform, or otherwise modify any agreement relating to the Property, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Trustor and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Deed of Trust shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

    **Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

    **Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

    **Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.

    **No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

    **Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

    **Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of

Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Vineyard Bank, N.A., and its successors and assigns.

**Borrower.** The word "Borrower" means Corte De Rosa Homes, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Vineyard Bank, N.A., its successors and assigns.

**Note.** The word "Note" means the promissory note dated August 9, 2007, **in the original principal amount of $2,592,500.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means Vineyard Bank, N.A., its successors and assigns, whose address is 1260 Corona Pointe Court, Corona, CA 92879 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Corte De Rosa Homes, LLC.

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.

TRUSTOR:

CORTE DE ROSA HOMES, LLC

PINNACLE PROPERTY INVESTMENTS, LLC, Member of Corte De Rosa Homes, LLC

By: _____
    Timothy G. McNeil, Member of Pinnacle Property Investments, LLC

By: _____
    Gregory K. Howell, Member of Pinnacle Property Investments, LLC

---

# CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _____    )
                                             ) SS

COUNTY OF _____    )

On _____, 20_____ before me, _____,
                                                      (here insert name and title of the officer)

personally appeared **Timothy G. McNeil**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____    (Seal)

---

# EXHIBIT C